[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on December 12, 1974 in Hartford, Connecticut. The birth name of the defendant was Kobylanski. The parties have three children, issue of this marriage, two of whom remain in their minority. The defendant has not given birth to any other children and is not currently pregnant. The parties CT Page 9253 have resided in the State of Connecticut for the statutory period, and no one contests the jurisdiction of this court to hear this matter.
The case had been scheduled for a two day trial, but the parties arrived at court with all issues framed consistently in their requests for relief, except two. The issues remaining for the court are periodic alimony and counsel fees.
Based upon the agreement of the parties, the court will find that their marriage has irretrievably broken down, and grants a decree dissolving the marriage. The court also can ratify the agreement of the parties to continue to parent their children jointly. The children are all in their adolescence, and while their oldest child has some special circumstances, all are in school, and working at least part-time. The children are of an age where they direct their own lives, with guidance from their parents. Neither party asks for child support, and the plaintiff father has continued the family on his medical insurance, and shall continue to do so. He shall pay the unreimbursed health-related expenses of the children, unless there is an extraordinary expense which impacts his ability to provide basic sustenance to them, in which case the court would be asked to revisit the issue of child support.
The children prefer to live in the family home with their father, and mother has secured her own housing, which is large enough to accommodate the children when they visit. The children will spend reasonable, liberal, and flexible time with their mother.
The parties have agreed to the language in the plaintiff's claims for relief with respect to the real estate. The agreement is that the defendant will convey all her right, title and interest in the marital real estate to the plaintiff, who will assume the mortgage, taxes, and insurance, and all carrying charges henceforth in and to that property, and hold the plaintiff harmless therefrom. The plaintiff shall sign a promissory note in customary form in the amount of Six Thousand, Eight Hundred, Forty-two ($6,842.00) Dollars payable at six (6%) percent per annum upon the eighteenth birthday of the youngest child or his graduation from high school in his eighteenth year, or no later than the child's nineteenth birthday. Said promissory note is to be secured by a mortgage on the marital real estate. CT Page 9254
The plaintiff father shall be entitled to claim, as income tax deductions, the minor children for income tax purposes. The defendant mother shall cooperate in signing any forms necessary for such deductions as provided by the Internal Revenue Service.
The plaintiff husband shall transfer, by Qualified Domestic Relations Order, fifty (50%) percent of his pension and incentive savings plan to the defendant wife effective on November 1, 1996.
The parties shall retain their personal property and their bank accounts, as well as the automobiles currently in their possession. They shall cooperate in the signing of any paperwork necessary to effect transfer of title for motor vehicles if that is necessary.
The contested portion of this case involves, as indicated, the request by the defendant wife, for periodic alimony and counsel fees. The plaintiff testified concerning the courtship and early marriage of the parties, and their life at home with the three children. He was involved in his work, and has attained a credible middle management position with one of the Hartford insurance companies. He is employed to his maximum. He described his wife as artistic, and having talent. He indicated that they each took courses after high school, but that she did not pursue gainful employment out of the household. She insisted in her testimony that that was due to her home and child care responsibilities.
It was clear from the testimony and the photographic evidence that the parties lived a "quasi-hippy" life style, and while the defendant claimed that she objected to the plaintiff's marijuana use in the home, that she did not see fit to challenge the marriage itself because of that. The parties lived in a remote, hilly area, with distance from their nearest neighbors. The plaintiff complained that within the recent past, the defendant had become very close to a prominent Canton family, and had disengaged completely from the family. He was left to not only work outside the home, but to do the bulk of the household work as well. The defendant claimed that she had always done the cooking for the family, even when she was caring for ill members of this other family.
The plaintiff also complained that the defendant had not been faithful to him during the course of the marriage, and he produced a witness who testified that the defendant had confided CT Page 9255 in him that her marriage to the plaintiff was unhappy, and that she was in love with another man. Thereafter, others told him that they had been aware of the defendant's infidelity over the years. The plaintiff claimed that this was the sole cause of the breakdown of the marriage, and could not testify, when asked on cross-examination, of any behaviors he might have engaged in which led to the breakdown of the marriage.
The defendant testified that the parties had been friends, but that their relationship became intimate before their marriage. She testified that the plaintiff knew she had given birth in her teens to a child who was freed for adoption, and that after their marriage, she was forced to abort their first pregnancy, causing her great distress, and continuing hurt. She felt that her desires and needs would never be seriously addressed by him. When she learned that she was pregnant with their oldest child, she refused to consider even a conversation about "plans" for the child, but insisted that they begin their family.
The defendant claimed that she lacked trust in the defendant, but that many issues were not discussed to resolution. She had been the victim of familial incest in her youth, and she testified that she frequently heard his denial to expend money on their home as a denial of self. She was quiet and sad in demeanor on the witness stand, and often tearful.
Their home was a cottage, which plaintiff's mother had partially winterized prior to their purchase of it. Her description of how they lived, with children in the house, was regarded by the court to be decision arrived at by lack of funds, and her inability to assert her position. There were animals which shared space with the family, in the form of mice and snakes. While they lived in the woods, the defendant found their neighbors to be acceptable only on the outside. The plaintiff was never asked about those items, and the court can only infer that he was not concerned. The state of their home, certainly, had little impact on the ultimate breakdown of the marriage. Her perception that her interests were subordinate to his, including his expenditure of money on marijuana, were her justification for her behaviors later in the marriage.
As the court regards the issues in this case, and comparing the evidence found with the statutory criteria enunciated in Conn. Gen. Stat. Sec. 46b-81 et seq., finds that the defendant is CT Page 9256 entitled to periodic alimony for a period of time. The total value of assets available for distribution are small, despite the length of this marriage. While there is conduct which could be considered fault on the part of the defendant, that conduct occurred during the latter part of the marriage, after the children were older, and after much effort had been expended by the defendant to create a "home and hearth" for the plaintiff following his work outside the home. They led a more traditional life in terms of labor distribution during the early part of their marriage. As a result, the defendant did not maximize her employability as did the plaintiff, and the disparity of their incomes into the future is significant. Because of this income disparity, the defendant's ability to acquire assets, and to prepare for any kind of adequate retirement, is limited.
The court finds that the income flow from the plaintiff's employment must be considered as an asset of the marriage. The plaintiff has only slightly better educational qualifications that those of the defendant, but it is clear that he had the advantage of employment that produces greater income. He also has had the benefit of uninterrupted employment. The fact that the defendant is employed to her maximum, and that any aspirations she might have in a career in art are speculative at best, requires a contribution not only to her support, but to her ability to save for her retirement. Because there are no other assets from which such an acknowledgement of her efforts for the family over the years can be found, the court is left with only this option. The court, therefore, awards alimony in the amount of One Hundred ($100.00) Dollars per week until the youngest minor child reaches the age of eighteen, graduates from high school or reaches his nineteenth birthday, whichever first occurs. Thereafter, and for a total period not to exceed ten (10) years from the date of the judgment, the plaintiff shall pay the sum of One Hundred, Fifty ($150.00) Dollars per week. The alimony is non-modifiable as to duration and amount. It shall terminate only upon her death.
The court also orders that the plaintiff be responsible for the health insurance for the defendant, as provided either by contract or COBRA, for the contract period or for the statutory period. He shall pay for that coverage.
The court understands that there was a disagreement concerning the appropriateness of alimony in this case. Therefore, the court will not award attorneys' fees to the CT Page 9257 defendant. The additional time and billable hours for this short and simple trial do not make up the bulk of the attorney's fees requested in the claim for relief. The court also finds that there are not sufficient liquid assets owned by the plaintiff to discharge such an award, especially in light of his commitment of care for the children, including his articulation that he will attempt to assist them with higher education.
Judgment shall enter consistent with this opinion.
DRANGINIS, J.